STARKEY *vs.* STARKEY.

1. Where a husband actually drives his wife from himself and his house, or, by his cruel and abusive treatment, compels her to leave it for her safety or comfort, it is an abandonment and separation by him, and would entitle her to support and maintenance, under the tenth section of the divorce act.

2. But where the wife leaves her husband and his home, and goes and continues to reside elsewhere, this is *prima facie* abandonment by her, and she must show clearly that her going away was compulsory.

This cause was argued upon bill, answer, and proofs.

*Mr. J. M. Scovel,* for complainant.

*Mr. Carman,* for defendant.

THE CHANCELLOR.

The bill is exhibited for support and maintenance, under the tenth section of the divorce act. It alleges that the complainant was married to the defendant in 1857, and lived with him until 1867; that he treated her at times with great harshness and extreme cruelty; that on the 6th of August, 1867, he cruelly beat her, drove her away from his house, her home, striking her on the head with his fist, saying, with an oath, "now I will kill you, and I want you to leave my house right away;" that she went away and continued to live away from him until November 17th, 1869, twenty days before the filing of this bill, when she sent a letter to him by a special messenger, offering to return and live with him, and desiring an answer within a week, or else that she would be compelled to commence a suit against him; and that to this letter he returned an insulting answer.

These facts. if proven, are sufficient to entitle her to the relief she asks. It is true, that the statute authorizes the relief only in cases where "a husband, without any justifiable cause, shall abandon his wife, or separate himself from her, and refuse or neglect to maintain and provide for her;"

and in this case she left his house and separated herself from him. Yet, in all cases where a husband either actually drives his wife from himself and his house, or by his cruel and abusive treatment, compels her to leave it for safety or comfort, it is an abandonment and separation by him. But when the wife leaves her husband, and his home, and goes and continues to reside elsewhere, this is *prima facie* an abandonment on her part, and the burden of proof is upon her to show that her going away was not voluntary, but that she was compelled to go by his treatment or command.

In this case the question depends upon what was done on the 6th of August, the day upon which she left his house. There is proof, on her part, of some acts of cruelty at different times before this, but they are positively denied by him, and did the case depend upon them they are not sufficiently proved to found a decree upon; the evidence is conflicting; that against them is almost, if not quite, as strong as the evidence of the complainant. But it is clear that these prior acts did not cause the separation, and therefore cannot justify it; they had been forgiven and condoned.

The violence and threats, and command to go away on the 6th of August, 1867, are proved by the oath of the complainant alone. They are denied by the defendant in his testimony, and also by his daughter, who was present at the time. Their story of what then took place differs entirely from that told by the complainant in her bill, and in her testimony.

The clear weight of testimony is against the complainant on this point, where the burden of proof is upon her. Nor is she more successful in proof of his refusal to permit her to return, when she offered to do so in writing. In the first place, it seems to me that the offer was not made in good faith for the purpose of being received by him, but made under the advice of counsel, as a foundation for this suit. She had left his house and stayed away for two years, without any offer to return, or negotiations for reconciliation. The defendant had broken up housekeeping, and was living with

his son. Under these circumstances, a letter sent by a mere messenger, offering to return, and requiring an answer in a week, under pain of a law suit, is more a declaration of war than an attempt at reconciliation, or restoration to her place in his family. If she left him without sufficient cause, as I must conclude from the evidence in this cause, such a letter, even if not answered, would not place him in the position of having abandoned his wife or separated himself from her. But she not only fails to show that he returned an insulting answer, as alleged in her bill, but it is positively proved by him, and by more than one witness besides himself, that he told her messenger to tell her she might come if she saw fit to come, where he then was boarding with his son. He offered her the only home and place which he had for her. That he had no other was evidently caused by the fact that she had left him. His circumstances were such that he could not, within a week, if at all, procure a new, separate home where she might live with him. And the difficulties and quarrels of their past life, unquestionably in some degree owing to her violence and temper, were such that it might not be wise, on a note so short and defiant, to incur the expense of providing a home, in expectation or hope that she would remain in it.

I am forced to conclude that this is not a case of abandonment, such as to entitle the complainant to relief under the tenth section of the divorce act.

The bill must be dismissed.